IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA DONOVAN, on behalf of herself | : | CIVIL ACTION |
| and as p/n/g/ of her minor daughter | : | |
| BRITTANY DONOVAN | : | |
| | : | |
| v. | : | NO. 08-4075 |
| | : | |
| IDANT Laboratories, as a division of | : | |
| DAXOR CORPORATION | : | |

O'NEILL, J.                                                                  MARCH  31 , 2009

MEMORANDUM

On July 16, 2008, plaintiff Donna Donovan on behalf of herself and as p/n/g of her minor

daughter Brittany Donovan filed a complaint in the Court of Common Pleas, Philadelphia

County.  They allege that defendant Idant Laboratories, a division of Daxor Corporation, is liable

for negligence, breach of contract, third-party beneficiary breach of contract, breach of the

express warranty of merchantability, breach of implied warranty of merchantability, third-party

beneficiary breach of express and implied warranties of merchantability, negligent

misrepresentation, strict products liability and negligent infliction of emotional distress for

selling defective sperm to Donna Donovan.  On August 21, 2008, defendant removed this action

to this Court.  Presently before me are defendant's motion to dismiss, plaintiffs' response,

defendant's reply and plaintiffs' sur-reply thereto.

BACKGROUND

In early 1994, plaintiff Donna Donovan, a Pennsylvania domiciliary, conducted research

in order to locate a sperm bank for the purpose of artificial insemination.  Plaintiffs allege that

plaintiff  Donna Donovan entered into a contract with defendant Idant Laboratories, a subsidiary

of Daxor Corporation, a New York corporation with its principal place of business in New York, and signed a consent form which contained various representations regarding the quality of the product including that:  (1) semen stored at Idant is exceptionally safe; (2) Idant has a screening program that far exceeds mandated standards and (3) Idant's donors go through a rigorous screening process to ensure that they have a good genetic background and history.  Plaintiffs allege that, based on these representations, Donna Donovan signed the consent form and selected Idant to provide her with semen for artificial insemination.  Donna Donovan was then sent information regarding potential donors and selected donor G738.  Plaintiffs allege that she was informed that donor G738 had been fully tested in accordance with New York Health Regulations and that information did not indicate that he had any genetic defects or a history of mental retardation.  Plaintiffs further allege that Idant submitted additional correspondence in which it represented that Donor G738 had been a donor for over two years, his sperm had been quarantined and stored for over six months before use and was retested and safe.

After Donna Donovan paid a fee, defendant shipped Donor G738's semen to her physician in April of 1995.  Plaintiffs allege that she was successfully inseminated with Donor G738's semen and that she gave birth to plaintiff Brittany Donovan on January 4, 1996. Plaintiffs allege that Donna Donovan noticed abnormalities and developmental delays in the months following Brittany's birth and her pediatrician, Dr. John Curley, informed her that Brittany's development was abnormal.  Brittany was taken to the Philadelphia Health Management Corporation for evaluation under the Child Link Program.  Child Link referred plaintiffs to Ken-Crest Services which noted developmental difficulties.  Plaintiffs allege that in November of 1997 Brittany was referred to the Center for Autistic Children which noted similar

2

developmental delays, and Children's Hospital of Philadelphia diagnosed her as a Fragile X carrier on December 19, 1997.  On or about January 28, 1998, plaintiffs were genetically tested at SmithKline Beecham Clinical Laboratories in Norristown, Pennsylvania to determine whether Donna Donovan was a Fragile X carrier.  On February 16, 1998, plaintiffs' allege that SmithKline reported that Donna Donovan was not a Fragile X carrier.  On May 6, 1998, it determined that Donor G738 was a carrier.

Despite SmithKline's report, plaintiffs allege that Donna Donovan relied on two reports forwarded to her by Idant, one by Dr. Fred Gilbert on July 15, 1998 and one by Dr. Paul G. McDonough on September 12, 1998 which stated that Brittany's developmental problems were not related to Fragile X nor could they be the result of the sperm that was purchased through Idant Labs.  Plaintiffs allege that in late August 2006 Dr. Randy Hagerman, a professor at the University of California at Davis M.I.N.D. Institute, informed Donna Donovan that there was a connection between the purchase of sperm from Idant and Brittany's developmental problems. Plaintiffs further allege that it was not until 2008 when a report was published in The American Journal of Medical Genetics Part A entitled "A Girl with Fragile X Permutation From Sperm Donation" that Donna Donovan knew definitively that Brittany's Fragile X developmental and other problems were caused by the sperm sold by Idant.

Fragile X Syndrome, also known as Martin-Bell Syndrome, is a genetic syndrome which results in a spectrum of physical, intellectual, emotional and behavioral characteristics which range from severe to mild in manifestation.  Though it was first described in 1943, it was not until 1991 that scientists discovered the gene (called FMR1 for "Fragile X Mental Retardation - 1") that causes Fragile X.  A DNA test for Fragile X was developed in 1992.  According to the

CDC, the prevalence of the full mutation in caucasian populations is approximately 1 in 4,000 to 1 in 6,000 males. Female children of female carriers have a 50% chance of inheriting the disease and female children of male carriers have a 100% chance of inheriting the disease. As the disease is carried on the X chromosome and men have only one X chromosome, male carriers are likely to exhibit symptoms of Fragile X at a much more severe level than females, though some females exhibit severe symptoms. According to the Fragile X Research Foundation, though symptoms vary even among those affected in the same family, the signs and symptoms frequently include some variation of mental impairment, ranging from learning disabilities to mental retardation, attention deficit and hyperactivity anxiety, unstable moods, autistic behaviors, seizures and physical features including a long face, large ears, flat feet and hyper-extensible joints.

Plaintiffs allege that Donor G738 exhibited symptoms of Fragile X which defendant failed to recognize. Additionally, plaintiffs allege that Brittany, as a result of being born with Fragile X, has permanently impaired developmental communication and play, motor planning, sensory and cognitive skills and that she is at a high risk for premature ovarian failure and early menopause. She has already been diagnosed with ovarian cysts and is having problems with her menstrual cycles. They allege that she has difficulties with shyness, social anxiety, and is at risk for eye problems, seizures and mitral valve prolapse. Moreover, they allege that any children she has will be at a high risk for the same problems (a child of a female carrier has a 50% chance of inheriting the disease) so plaintiffs allege that Brittany will have to arrange for donor eggs to avoid this complication in any offspring.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff[] may be entitled to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  A well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  When considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiff[] will ultimately prevail, only whether [he is] entitled to offer evidence to support [his] claims."  Nami, 82 F.3d at 65, citing Scheuer, 416 U.S. at 236.

DISCUSSION

Plaintiffs have asserted claims for (1) negligence, (2) breach of contract, (3) third-party beneficiary breach of contract, (4) breach of the express warranty of merchantability, (5) breach of implied warranty of merchantability, (6) third-party beneficiary breach of express and implied warranties of merchantability, (7) negligent misrepresentation, (8) strict products liability and (9)

negligent infliction of emotional distress based on defendant's failure to test donor G738's semen for Fragile X before sending it to plaintiff Donna Donovan in 1995 when testing became possible in 1992.  Defendant has moved for dismissal on the grounds that these claims are time-barred by the Pennsylvania statutes of limitations for torts and contracts and for failure to state a claim.

I.    Statutes of Limitations

A.    Choice of Law

Before I address the issues in this case, I must decide which state's law applies to plaintiffs' claims.  Where, as here, federal jurisdiction is based on diversity of citizenship, I must apply the choice of law rules of the forum state, here Pennsylvania.  St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 n.3 (3d Cir. 1991) citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Though plaintiffs argue that New York law applies and defendant argues that Pennsylvania law applies to the substantive law, both agree that the Pennsylvania statutes of limitations applies.  Pennsylvania's borrowing statute provides that "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa. C.S.A. § 5521(b); see Agere Systems, Inc. v. Advanced Environmental Technology Corp., 552 F. Supp.2d 515 (E.D. Pa. 2008), "noting that Pennsylvania considers statutes of limitations to be procedural and therefore applies its own statutes of limitations unless the so-called 'borrowing statute' applies." New York law also applies the shorter statute of limitations under its borrowing statute for causes of action that accrue in other states.  N.Y. McKinney's C.P.L.R. 202; see Spitzer v. Shanley Corp., 151 F.R.D. 264 (S.D. N.Y. 1993).

6

Plaintiffs bring claims both in contract and in tort.  "An action upon a contract, obligation or liability founded in writing" are governed by a four year statute of limitations under Pennsylvania law.  42 Pa. C.S.A. §§ 5525(3), 5525(4), 5525(8).  The New York statute of limitations for contracts is six years from accrual.  McKinney's C.P.L.R. § 213.  Under Pennsylvania law, a two-year statute of limitations applies to "any . . . action or proceeding to recover damages to injury to person or property which is founded on negligent . . . or otherwise tortious conduct."  42 Pa. C.S.A. § 5524(7).   Thus, because Pennsylvania's statutes of limitations first bar the claim, they apply to both tort and contract claims.

Additionally, in Pennsylvania, the statute of limitations for claims brought by minors does not run until two years after reaching the age of majority which is 18.  Pennsylvania Minors' Tolling Statute, 42 Pa. C.S.A. § 5533(b)(1)(i-ii).  The New York infancy statute provides that for causes of action with a statute of limitations of three years or more, minors have three years from when they attain the age of majority, 18, to file a claim and that causes of action with a statute of limitations of fewer than three years have that length of time after they turn 18 to file a claim. N.Y. McKinney's C.P.L.R. 2028.  Again, the Pennsylvania statue of limitations is shorter than that of New York.  Thus, even if New York substantive law applies, if the Pennsylvania period of limitations first bars the claim, the Pennsylvania statute of limitations for minors will apply.

B.      Statute of Limitations for Brittany Donovan

As previously noted, the Pennsylvania Minor's Tolling Statute for claims brought by a minor does begin to run until two years after the minor reaches the age of 18.  42 Pa. C.S.A. § 5533(b).  Thus, an injured minor has until her twentieth birthday to file suit on a tort claim, Apicella v. Valley Forge Military Academy & Junior College, 630 F. Supp. 20 (E.D. Pa. 1985),

7

and presumably until her twenty-second birthday to file suit on a contract claim.  As Brittany

Donovan has not yet reached the age of 18, her claims are not barred by the relevant statutes of

limitations.

       C.    <u>Statute of Limitations for Donna Donovan</u>

       As noted above, under the Pennsylvania statutes of limitations, a plaintiff's claims are

time-barred if she does not file negligence or fraud claims within two years of injury or a breach

of contract claim within four years of injury.  42 Pa. C.S.A. §§ 5524-25.  A cause of action

accrues "as soon as the right to institute and maintain a suit arises, which generally is when the

injury was inflicted."  <u>Padalino v. Standard Fire Ins. Co.</u>, 2008 WL 4630585, at *6 (E.D. Pa. Oct.

15, 2008), <u>citing</u> <u>Fine v. Checcio</u>, 870 A.2d 850, 857 (Pa. 2005).  Here, Donna Donovan gave

birth on January 4, 1996 after an implantation in 1995 and alleged that she noticed abnormalities

and developmental delays in the months following Brittany's birth.  Regardless of what date is

used to establish the date of injury, the date of her filing of suit, July 16, 2008, was substantially

after the statutes of limitations had run.

       As a general rule, it is the duty of the party asserting a cause of action to properly inform

herself of the facts and circumstances upon which her alleged right of recovery is based within

the prescribed period.  <u>Floyd v. Brown & Williamson Tobacco Corp.</u>, 159 F. Supp.2d 823, 829

(E.D. Pa. 2001), <u>citing</u> <u>Crouse v. Cyclops Industries</u>, 745 A.2d 606 (Pa. 2000).  In some cases,

however, the discovery rule will extend the statute of limitations.  Under the discovery rule, the

statute of limitations is tolled until a plaintiff "knew or should have known on the exercise of

reasonable diligence of [her] injury and its cause."  <u>Fine</u>, 870 A.2d at 858; <u>Murray v. Hamot</u>

<u>Medical Center</u>, 633 A.2d 196, 199 (Pa. Super. Ct. 1993), noting that the statute of limitations

begins to run when the plaintiff has discovered or, in the exercise of reasonable diligence, should

have discovered that she has been injured and that her injury was caused by another's conduct.  A

party asserting the discovery rule "bears the burden of establishing the inability to know of the

injury despite the exercise of reasonable diligence."  Wawrzynek v. Statprobe, Inc., 422 F.

Supp.2d 474, 479 (E.D. Pa. 2005), citing Dalrymple v. Brown, 701 A.2d 164, 167 (Pa. 1997).

     Reasonable diligence is defined as "a reasonable effort to discover the cause of an injury

under the facts and circumstance present in the case."  Wawrzynek, 422 F. Supp.2d at 479, citing

Cochran v. GAF Corp., 666 A.2d 245, 249 (Pa. 1995).  "[T]here are few facts which diligence

cannot discover, but there must be some reason to awaken inquiry and direct diligence in the

channel in which it would be successful.  Crouse, 745 A.2d at 611.  Although reasonable

diligence is an objective rather than a subjective standard, "[i]t is sufficiently flexible . . . to take

into account the difference[s] between persons and their capacity to meet certain situations and

the circumstances confronting them at the time in question."  Id., citing Burnside v. Abbott

Laboratories, 505 A.2d 973, 988 (Pa. Super. Ct. 1985), appeal denied (Pa. 1986).  A plaintiff's

actions must be evaluated, therefore, to determine whether he exhibited "those qualities of

attention, knowledge, intelligence and judgment which society requires of its members for the

protection of their own interests and the interests of others."  Id.  A party is not under an absolute

duty to discover the cause of her injury, but she must exercise the level of diligence that a

reasonable person would employ under the facts and circumstances presented in her case.

Crouse, 745 A.2d at 612, citing Cochran, 666 A.2d at 249.  A plaintiff need not know that she

has a cause of action, or even that an injury was caused by the wrongful conduct of another, but

rather "once a plaintiff possesses the salient facts concerning the occurrence of [her] injury and

who or what caused it, [she] has the ability to investigate and pursue [her] claim." Romah v. Hygienic Sanitation Co., 705 A.2d 841, 857 (Pa. Super. Ct. 1997), quoting Vernau v. Vic's Market, Inc., 896 F.2d 43, 46 (3d Cir. 1990).  "When the discovery rule applies . . . [w]hether the statute of limitations has run on a claim is a question of law for the trial court to determine; but the question as to when a party's injury and its cause were discovered or discoverable is for the jury."  Fine, 870 A.2d at 859 (internal citations omitted).

Here, after several screenings, the Children's Hospital of Philadelphia diagnosed Brittany as a Fragile X carrier on December 19, 1997.  On May 6, 1998, SmithKline reported to Donna Donovan that Donor G738 was a Fragile X carrier having previous found that Donna Donovan was not.  In arranging for these screenings, Donna Donovan exercised the diligence that a reasonable person would employ under the facts and circumstances presented in a particular case and discovered that she had been injured in that the sperm she received from Idant carried the Fragile X gene.  At that time, she knew or should have known that she had been injured and who had likely caused the injury.  Thus, under the discovery rule, the date of discovery which caused the statutes of limitation to run was May 6, 1998.  As this claim was filed in July 2008, the discovery rule does not toll the two-year statute of limitations for tort claims nor the four-year statutes of limitations for contract claims of Donna Donovan.

However, a party's fraudulent concealment of its action or identity also will toll the statute of limitations.  Ciccarelli v. Carey Can. Mines, Ltd., 757 F.2d 548, 556 (3d Cir. 1985). Fraudulent concealment is based on estoppel and "provides that a defendant may not invoke the statute of limitations if, through fraud or concealment, [it] caused the plaintiff to relax [her] vigilance or deviate from [her] right of inquiry into the facts."  Wawrzynek, 422 F. Supp.2d at

479, citing Drelles v. Manufacturers Life Ins. Co., 881 A.2d 822, 832 n.6 (Pa. Super. Ct. 2005).

Fraudulent concealment "does not require fraud in the strictest sense encompassing an intent to

deceive, but rather, fraud in the broadest sense, which includes an unintentional deception."

Fine, 870 A.2d at 860.  However, the standard of reasonable diligence applies equally to the

doctrine of fraudulent concealment as to the "discovery rule," so "a statute of limitations that is

tolled by virtue of fraudulent concealment begins to run when the injured party knows or

reasonably should know of [her] injury and its cause."  Id. at 861.  In other words, in order to

prove fraudulent concealment, a plaintiff must allege that the defendant concealed, either

intentionally or unintentionally, the existence of the injury or the cause and that the plaintiff

would not have discovered the injury or cause with reasonable diligence.  These allegations must

be "stated with particularity."  Fed. R. Civ. P. 9(b); Byrnes v. DeBolt Transfer, Inc., 741 F.2d

620, 626 (3d Cir. 1984).  "Reasonable diligence may require that a plaintiff seek an additional

medical examination and hire a lawyer."  Faustino v. A.I. DuPont Hosp. for Children of Nemours

Foundation, 2008 WL 1931003, at *3 (E.D. Pa. May 1, 2009), citing Cochran v. GAF Corp., 666

A.2d 245, 249 (Pa. 1995).  However, "[w]here common sense would lead plaintiff to question a

misrepresentation, the plaintiff cannot reasonably rely on that misrepresentation."  Mest v. Cabot

Corp., 559 F.3d 502, 516 (3d Cir. 2006).  While reasonable diligence is a jury question, "where

the facts are so clear that reasonable minds cannot differ, the commencement period may be

determined as a matter of law."  Debiec v. Cabot Corp., 352 F.3d 117, 129 (3d Cir. 2003); Fine,

870 A.2d at 858-59.

　　　In her complaint, Donna Donovan pled with particularity that, despite SmithKline's

findings, she relied on two reports forwarded to her by Idant in July and September of 1998

which stated that Brittany's developmental problems were not related to Fragile X because the

genetic mutation found in Donor G738 was not widely found to cause severe Fragile X;

accordingly, Fragile X could not be the result of the sperm that was purchased through Idant.[1]

Donna Donovan alleges that through those letters Idant concealed, either intentionally or

unintentionally, the existence of the injury or the cause and that Donna Donovan would not have

discovered the injury or cause with reasonable diligence.  See Fine, 870 A.2d at 860.  Donna

Donovan argues that it was not until late August 2006 when Dr. Randy Hagerman spoke with her

that she was convinced of a connection between the purchase of sperm from Idant and Brittany's

developmental problems.  She further alleges that it was not until 2008 when the report about her

daughter's inheritance of Fragile X from a sperm donation was published that she knew

definitively that the problems were caused by the sperm sold by Idant.

Donna Donovan exercised reasonable diligence when she requested genetic testing of her

own DNA and that of Donor G738.  See Faustino, 2008 WL 1931003, at *3.  Indeed, after

receiving the SmithKline reports, Donna Donovan contacted Idant to inquire as to its fault in

providing sperm carrying Fragile X.  Though Idant's physicians responded in the negative,

common sense would cause a reasonable person to question statements in the letters from Idant's

doctors regarding its liability especially in light of the facts that Brittany had been diagnosed by

an independent hospital and that an independent laboratory had found a genetic link between the

donor genes and Brittany's Fragile X carrier status.  Donna Donovan alleges that, as a layperson,

---

[1] As defendant notes, I may properly consider the documents attached as exhibits to
defendant's motion to dismiss because the "are considered part of the pleadings if they are
referred to in the plaintiff's complaint and are central to the claim."  Pryor v. NCAA, 288 F.3d
548, 560 (3d Cir. 2002), quoting 62 Fed. Proc., L.Ed. § 62:508.

she simply believed the reports of Idant's physicians and ignored the prior findings of her own independent physicians and laboratory.  However, common sense would suggest that, regardless of one's background in medicine, when a female child has been diagnosed with developmental abnormalities and independent genetic testing reveals that the child is a Fragile X carrier as is the child's natural father and the mother is not, and the tests further state that "all daughters of transmitting males are Fragile X carriers," it is reasonable to assume that the father's status as a Fragile X carrier was the cause of Brittany's Fragile X.  Mest, 559 F.3d at 516.  That the Idant physicians came to a different conclusion and discussed alternative reasons for her daughter's mental retardation other than Fragile X does not toll the statute of limitations because of fraudulent concealment.  To hold otherwise would be to permit tolling for fraudulent concealment every time a defendant offered a different explanation of events which caused it to believe that it was not at fault.  That is an untenable extension of the fraudulent concealment doctrine.  Donna Donovan's assertion that it was not until a paper about her daughter's genetic condition was published that she realized that she had a potential cause of action against Idant is also not credible; her letters to Idant investigating its fault make it clear that she knew that she had a potential cause of action against Idant well before 2008.  I will therefore grant defendant's motion to dismiss all of plaintiff Donna Donovan's claims as barred by the relevant statutes of limitations.[2]

II.    <u>Failure to State a Claim</u>

I will now address the remaining claims of plaintiff Brittany Donovan for negligence,

---

[2]  Defendant also argues that Donna Donovan's claims fail to state a claim.  I need not consider this issue.

breach of contract as a third-party beneficiary, breaches of the express and implied warranties as a third party beneficiary, negligent misrepresentation and strict products liability.  Plaintiff alleges that the law of the state of New York applies and defendant asserts that Pennsylvania law governs.  Thus, I must first conduct a choice of law analysis and then analyze plaintiff's claims under such law.

      A.    <u>Choice of Law</u>

Where, as here, federal jurisdiction is based on diversity of citizenship, I must apply the choice of law rules of the forum state, here Pennsylvania.  <u>St. Paul Fire & Marine Ins. Co. v. Lewis</u>, 935 F.2d 1428, 1431 n.3 (3d Cir. 1991) <u>citing</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941).  Plaintiff asserts claims based in tort and in contract law.  "Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as depecage."  <u>Berg Chilling Sys., Inc. v. Hull Corp.</u>, 435 F.3d 455, 462 (3d Cir. 2006); <u>Taylor v. Mooney Aircraft Corp.</u>, 265 Fed. Appx. 87, 91 n.4 (3d Cir. 2008), recognizing prediction that a Pennsylvania court would apply different state laws in the same case because <u>Griffith v. United Airlines, Inc.</u>, 203 A.2d 79, 805 (Pa. 1964), suggests that each issue must receive a separate choice of law analysis.

Pennsylvania's choice of law analysis requires that I determine whether a false conflict exists, and, if no false conflict exists, that I determine which state has the greater interest in the application of its law.  <u>LeJeune v. Bliss-Salem, Inc.</u>, 85 F.3d 1069, 1071 (3d Cir. 1996), <u>citing</u> <u>Cipolla v. Shaposka</u>, 267 A.2d 854, 855-56 (Pa. 1970).  A false conflict exists where the application of either state's law renders the same result, <u>Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.</u>, 94 F. Supp.2d 589, 594 (E.D. Pa. 1999), or where "only one jurisdiction's

governmental interests would be impaired by the application of the other jurisdiction's law,"
LeJeune, 85 F.3d at 1071.

If a true conflict exists, the determination of which state has a greater interest in having its
law applied is made by applying the law of the state with the most significant contacts or
relationships with the particular issue. Garcia v. Plaza Oldsmobile LTD, 421 F.3d 216, 220 (3d
Cir. 2005). This assessment considers the needs of the interstate and international systems,
relevant policies of the forum, relevant policies of other interested states and the relative interests
of those states in the determination of the particular issue, protection of justified expectations,
basic policies underlying the particular field of law, certainty, predictability and uniformity of
result and ease in the determination and application of the law to be applied. Bearden v. Wyeth,
482 F. Supp.2d 614, 619 (E.D. Pa. 2006), citing Restatement (Second) of Conflict of Laws §
6(2). In assessing a state's significant contacts the "Second Restatement dictates different
approaches depending on the substantive law at issue." Berg Chilling Sys., 435 F.3d at 463.
Therefore, the particular issues before me must be characterized as one of tort, contract,
corporate law or some hybrid.

### 1.    Choice of Law for Contract Claims

A conflict of law question exists with regard to which state's law applies to Brittany
Donovan's claims of third-party beneficiary breach of contract and third-party beneficiary breach
of express and implied warranties of merchantability. There is no choice of law provision in the
contract at issue here. As plaintiff contends, New York has a strong interest in regulating the
collection, testing, screening and delivery of semen from its local sperm banks and has enacted a
number of laws in order to do so. See e.g., McKinney's Public Health Law § 573; McKinney's

15

Public Health Law § 580; McKinney's Public Health Law § 2780; McKinney's Public Health Law § 4364.  Though plaintiff suggests that New York law regulating privity in applying express warranties is broader than that provided by Pennsylvania, that is immaterial as the New York interest is in protecting and regulating corporations within its borders, not in applying its law to protect citizens of other states.  Defendant notes that the semen was sold to be used by Donna Donovan in Pennsylvania and that the injury that plaintiff alleges resulted from the breach of contract took place in Pennsylvania.  Additionally, defendant notes that the contract, while accepted in New York, was initiated by a Pennsylvania resident in Pennsylvania.  As each state's interests would be impaired if its law were not applied, there is a true conflict of laws.

Where, as here, there is a true conflict with respect to a contract issue and no choice of law provision exists in a contract, the court must examine:  "(1) the place of negotiation, contracting and performance of the contract in question; (2) the location of the subject matter of the contract; and (3) the parties' citizenship" to determine which forum state has the most interest in the controversy and the most intimate connection with the outcome.  Babcock & Wilcox Ebensburg Power v. Zurick Am. Ins. Co., 368 F. Supp.2d 387, 397 (W.D. Pa. 2004) quoting Aircraft Guar. Corp. v. Strato-Lift, Inc., 951 F. Supp. 73, 76-77 (E.D. Pa. 1997) (internal quotations omitted).

Plaintiff argues that New York's interest in regulating its corporations outweighs Pennsylvania's interest in providing redress for wrongs committed against one of its citizens so New York substantive law should apply to the liability aspect of this case.  Idant is a New York corporation and citizen that accepted the contract in New York that plaintiffs offered in Pennsylvania and performed the relevant screening and testing at issue in the contract in New

York.  The Pennsylvania contacts are that the contract was initiated in Pennsylvania and that the injury and harm alleged took place in Pennsylvania.  However, since the majority of the conduct relevant to the contract at issue, i.e. the testing and screening, took place in New York and New York has a strong policy incentive to regulate the sperm banks in its state, I conclude that New York law applies to claims based on the contract.

        2.      <u>Choice of Law for Tort Claims</u>

A conflict of law question also exists with regard to plaintiff's claims based in negligence and on strict liability.  The parties do not dispute that a true conflict exists for these tort issues. The differences between Pennsylvania and New York tort law are significant.  Both New York and Pennsylvania have enacted blood shield statutes that establish that blood and blood derivations are not products under strict products liability and warranty.  However, under the Pennsylvania statute,[3] human tissues other than blood and its derivatives are included in the exemption but the New York statute includes only blood and its derivatives.[4]  Semen is not a

---

[3] Under the Pennsylvania blood shield law,

(a) General Rule.--No person shall be held liable for death, disease or injury resulting from the lawful transfusion of blood, blood components or plasma derivatives, or from the lawful transplantation or insertion of tissue, bone or organs, except upon a showing of negligence on the part of such person. Specifically excluded hereunder is any liability by reason of any rule of strict liability or implied warranty or any other warranty not expressly undertaken by the party to be charged.

42 Pa. C.S.A. § 8333 (Purdon's 1982).

[4] Under the New York Public Health Law § 580,

The collection, processing, storage, distribution or use of blood, blood components or blood derivatives for the purpose of diagnosis, prevention or treatment of disease is hereby declared to be a public health service and shall not be construed to be, and is declared not to be, a sale of such blood, blood components or blood derivatives, for any

blood derivative; it is considered a human tissue.  As plaintiff Brittany Donovan would have a cause of action for strict liability and warranty in New York but would not have a cause of action in Pennsylvania, there is a true conflict.

 The relevant contacts to consider in the greater interest assessment of a tort issue, enumerated in Restatement (Second) of Conflict of Laws § 145(2)(a)-(d), include the place of injury, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship between the parties is centered.  Taylor v. Mooney Aircraft Corp., 265 Fed. Appx. 87, 91 n.4 (3d Cir. 2008).  These contacts must be weighed on a qualitative rather than quantitative scale.  Id.

Here, as with the contract-based claims, New York's contacts are more substantial for the conduct at issue.  While, the injury and the harm took place in Pennsylvania, the screening and testing at issue in the tort claims took place in New York.  There is no allegation that any tortious activity took place in Pennsylvania.  Thus, New York law applies to the tort claims alleged by Brittany Donovan.

B.    Negligence and Negligent Misrepresentation

Plaintiff Brittany Donovan concedes that her claims of negligence and negligent misrepresentation against defendant is based on the fact that, if defendant had properly tested and screened for genetic abnormalities in Donor G738's semen, that semen would not have been used and plaintiff Brittany Donovan would not have been born.  While this information might have

---

purpose or purposes whatsoever.

McKinney's Public Health Law § 580

caused Donna Donovan to choose different sperm with which to conceive a child, Brittany would not have been born with this genetic identity.  "[I]t is well settled that no cause of action may be maintained on behalf of an infant plaintiff for 'wrongful life,' i.e., that he or she would never have been born but for the negligence of the defendant."  Figueroa v. Giffone, 2009 WL 277623, at *3 (N.Y. Sup. Feb. 5, 2009), collecting cases.  Additionally, under New York law, there is no duty of care owed "to an individual who was not yet in utero when the alleged negligence occurred."  Andrews v. Keltz, 838 N.Y.S.2d 363, 370 (N.Y. Sup. 2007).  As plaintiff Brittany Donovan's claims of negligence and negligent misrepresentation constitute claims of wrongful life, I will grant defendant's motion to dismiss these claims.

C.    Third Party Beneficiary Breach of Contract and Breach of Express and Implied
       Warranty of Merchantability

Plaintiff alleges that defendant breached its contract with her to provide safe sperm when it provided sperm to Donna Donovan through donor G738 which contained Fragile X  by failing to carry out rigorous screening of its donors, failing to inquire whether prospective donors have a history of mental retardation in their family history, failing to train employees involved in donor screening to spot the signs of Fragile X, failing to screen donor G738 to ensure that he did not suffer from Fragile X and failing to warn plaintiff adequately of the risks of providing sperm carrying Fragile X.

Plaintiff bases her contract and warranty claims on her status as a third-party beneficiary to a contract between plaintiff Donna Donovan and Idant.  While the actual purchase order is not before me, defendant alleges that the contract attached to plaintiff's complaint makes clear than any contract was between Donna Donovan's treating physician as the client and Idant.  As the

19

identities of the contract's parties remain in dispute, it is still unclear whether Brittany Donovan

was an intended third-party beneficiary of the relevant contract and any express and implied

warranties of merchantability.

The Court of Appeals for the state of New York held in Mendel v. Henry Phipps Plaza

West, Inc., 6 N.Y.3d 783, 786 (2006), that a party:

> asserting third-party beneficiary rights under a contract must establish (1) the existence of
> a valid and binding contract between the other parties, (2) that the contract was intended
> for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than
> incidental, to indicate the assumption by the contracting parties of a duty to compensate
> [them] if the benefit is lost.

Transamerica Financial Life Ins. Co. v. Simmonds, 2008 WL 4302491, at *7 (N.Y. Sup. Sept.

22, 2008), collecting cases, internal citations omitted.  "The law is settled that an intended

beneficiary may maintain an action as a third party but an incidental beneficiary may not."  Id.

citing Alicea v. The City of New York, 145 A.D.2d 315, 317 (1d Dept. 1988).  However, "[e]ven

when the contracting parties specifically intend to confer benefits on a third party, not all

consequential damages which flow from a breach of the contract are recoverable by the third

party.  The contract must evince a discernible intent to allow recovery for the specific damages to

the third party that result from a breach thereof before a cause of action is stated."  Alicea, 145

A.D.2d at 317 (1988), citing Strauss v. Belle Realty Co., 98 A.D.2d 424, 427, aff'd 65 N.Y.2d 399.

Further, "as the party who seeks the status of a third-party beneficiary [it] has the burden of

demonstrating that [it] has enforceable rights thereunder . . . which the . . . parties to the contract

intended [it] to have."  Transamerica, 2008 WL 4302491, at *7, citing City of Amsterdam v.

Law, 270 A.D.2d 603, 605 (N.Y. 2000).

I will therefore grant plaintiff's request for leave to amend their complaint to plead

Brittany's third-party beneficiary claims for breach of contract and breach of express and implied

warranty of merchantability in the alternative under a contract between Donna Donovan and

Idant and between the Donna Donovan's physician and Idant.[5]

    D.    <u>Strict Products Liability</u>

    Defendant argues that plaintiff Brittany Donovan has failed to state a claim for strict

products liability because it provides a service rather than a product.  Under New York law, a

manufacturer may be held liable for placing "into the stream of commerce" a defective product

which causes injury.  <u>Kern v. Frye Copysystems, Inc.</u>, 878 F. Supp. 660, 665 (S.D. N.Y. 1995),

<u>citing</u> <u>Amatulli v. Delhi Const. Corp.</u>, 77 N.Y.2d 525, 532 (1991).  Several states including

Pennsylvania and New York have by statute exempted human biological products from strict

liability and held them to be a service.  As previously noted, under the New York Public Health

Law 580:

> The collection, processing, storage, distribution or use of blood , blood components or
> blood derivatives for the purpose of diagnosis, prevention or treatment of disease is
> hereby declared to be a public health service and shall not be construed to be, and is
> declared not to be, a sale of such blood, blood components or blood derivatives, for any
> purpose or purposes whatsoever.

McKinney's Public Health Law § 580.  While other state blood shield laws and the Restatement

(Third) of Torts - Product Liability § 19[6] include human tissue and/or organs in the list of

---

    [5]  As I am granting plaintiff's request for leave to amend the complaint, I will reserve
judgment on defendant's arguments that plaintiff has failed to state a claim and I will deny them
without prejudice.

    [6]  Defendant suggests that the definition of "product" found in the Restatement (Third) of
Torts - Product Liability § 19 should govern.  The Restatements holds that:

> For purposes of this Restatement:
> (a) A product is tangible personal property distributed commercially for use or

products which are exempted, the relevant New York statute does not and no case law has

extended the statute to also exempt human tissues like sperm.  See e.g., Aberbach v. Biomedical

Tissue Services, Ltd., 48 A.D.3d 716, 718 (N.Y. A.D.2d Dept. 2008), finding that patient who

had bone and other tissue implanted into his body failed to allege a sale, as required to state a

claim against distributor of bone and tissue for breach of express and implied warranties and

based on strict products liability.  Thus, under New York law, the sale of sperm is considered a

product and is subject to strict liability.  I will therefore deny defendant's motion to dismiss

plaintiff Brittany Donovan's claim of strict liability.

An appropriate Order follows.

---

consumption. Other items, such as real property and electricity, are products when the
context of their distribution and use is sufficiently analogous to the distribution and use of
tangible personal property that it is appropriate to apply the rules stated in this
Restatement.
(b) Services, even when provided commercially, are not products.
(c) Human blood and human tissue, even when provided commercially, are not subject to
the rules of this restatement.

Rest. (Third) of Torts - Product Liability § 19.  However, defendant has not shown nor can I find
evidence that the New York legislature or courts have adopted § 19.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA DONOVAN, on behalf of herself | : | CIVIL ACTION |
| and as p/n/g/ of her minor daughter | : | |
| BRITTANY DONOVAN | : | |
| | : | |
| v. | : | NO. 08-4075 |
| | : | |
| IDANT Laboratories, as a division of | : | |
| DAXOR CORPORATION | : | |

ORDER

AND NOW, this     31st     day of March 2009, upon consideration of defendant's Idant

Laboratories, as a division of Daxor Corporation  motion to dismiss, plaintiffs Donna and

Brittany Donovan's response, defendant's reply and plaintiffs' sur-reply, it is ORDERED that:

1) plaintiff Donna Donovan's claims are DISMISSED;

2) plaintiff Brittany Donovan's claims of negligence and negligent misrepresentation are

DISMISSED;

3) plaintiff Brittany Donovan is granted leave to amend her complaint within 20 days from date

to assert claims of third-party beneficiary breach of contract and breach of express and implied

warranties of merchantability;

4) defendant's motion to dismiss plaintiff Brittany Donovan's claim of strict liability is DENIED.


 /s/ THOMAS N. O'NEILL, JR.____
THOMAS N. O'NEILL, JR., J.